**SIGNED.**



**Dated: September 10, 2009**

_____
**JAMES M. MARLAR**
**U.S. Bankruptcy Judge**

_____

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MURPHY RAY KITTRELL, JR., | ) | No. 4:09-bk-08537-JMM |
| | ) | |
| | ) | **MEMORANDUM DECISION (Re: Stay** |
| | ) | **Relief Requested by M&I Marshall** |
| | ) | |
| Debtor. | ) | **& Ilsley Bank)** |

Before the court are two requests for stay relief filed by M&I Marshall & Ilsley Bank, NA (M&I) (DN 21 and DN 23). An evidentiary hearing was held on September 8, 2009, at which time the court considered evidence and argument. The court now rules.

## FACTS

### A. Coyote Lane Property

M&I is the owner and holder of two promissory notes executed by the Debtor, each of which is secured by separate parcels of real property, one in Tucson and one in Scottsdale.

The property which is located in Tucson is at 10333 N. Coyote Lane, Tucson, Arizona, and is also known as Tax Parcel 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. That obligation has been in monetary default since September, 2008. The balance due thereon, as of the filing of the bankruptcy petition on April 27, 2009, was $341,052.82 (Ex. 1, Affidavit of Margaret Fank).

1    The real property securing the debt is valued at $300,000 (Ex. 3, Affidavit of William

2    Dalton).

3          Thus, there is no equity in the property, as the debt exceeds the property's value.

4          The Debtor's plan calls for the Debtor to complete construction, estimated to cost

5    $53,000 (Ex. C), after which the Debtor's plan proposes, over a five-year period, to either sell or

6    refinance the property for an amount greater than required to pay off the M&I loan, the $53,000

7    construction loan, and return a profit to the Debtor.

8          The Debtor presented no evidence that the $53,000 construction loan was in process

9    or viable, nor that even if accomplished, that the property would increase in value sufficient to meet

10   his expectations.  Nor did the Debtor present any evidence, other than his optimism, that the current

11   dire economic condition would improve over time, and what that time frame would be.

12

13   **B.  Lot 253, Estancia, Tax Parcel 216-84-231 5**

14

15         M&I's balance on this secured obligation, on the petition date, was $821,783.59

16   (Ex. 1).  That property was appraised at $550,000, as of June 19, 2009 (Ex. 2).  The loan has been

17   in monetary default since May, 2008.  Thus, there is no equity in the property securing the debt.

18         As with the Coyote Lane property, the Debtor proposes to borrow $1.3 million to

19   construct a home on the property (Ex. B).  However, the proposed lender, Baron Financial, L.L.C.,

20   has not issued a legally binding letter of commitment (Ex. D), nor, as Mr. Greg Theisen testified,

21   would it do so without a current appraisal which would justify lending $1.3 million against a

22   property encumbered by a $821,000 first priority lien.

23         As with Coyote Lane, the Debtor argued that Arizona real estate values would

24   increase, over the time allotted for the plan, to enable him to sell or refinance the property for

25   enough to pay off M&I, the construction loan, and return a profit.  No evidence was presented to

26   credibly support that assumption.

27

28

2

## THE LAW

No equity currently exists in either property. 11 U.S.C. § 362(d)(2)(A). In addition, no evidence was presented to support the argument that the reorganization plan envisioned by the Debtor is feasible. In fact, upon the evidence provided by the Debtor, although his plan is optimistic, in the end, it is only speculative and offers his best guess as to the future of Arizona's real estate economy. A reorganization court cannot confirm a speculative plan. *In re Acequia*, 787 F.2d 1352, 1364 (9th Cir. 1986); 11 U.S.C. § 362(d)(2)(B).

M&I carried its burden of proof that no equity exists in the subject properties, but the Debtor failed to carry his burden that his proposed plan is "effective," which means feasible. 11 U.S.C. § 362(g).

## RULING

Therefore, the court is bound to grant the relief from the automatic stay in favor of M&I, as to both properties. A separate order will be entered which lifts the automatic stay as to 10333 N. Coyote Lane, Tucson, Arizona, and also as to Lot 253, Estancia, Scottsdale, Arizona.

DATED AND SIGNED ABOVE.

COPIES to be sent by the Bankruptcy Notification
Center ("BNC") to the following:

Murphy Ray Kittrell, Jr., Debtor

Eugene F. O'Connor, Attorney for M&I Marshall & Ilsley Bank, NA

Office of the U.S. Trustee